1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
SHAWN A. TOLIVER, SB# 148349

2 |   Email: Shawn.Toliver@lewisbrisbois.com
DAVID E. RUSSO, SB# 112023

3 |   Email: David.Russo@lewisbrisbois.com
JUSTIN S. KIM, SB# 255980

4 |   Email: Justin.Kim@lewisbrisbois.com
333 Bush Street, Suite 1100

5 | San Francisco, California 94104-2872
Telephone: 415.362.2580

6 | Facsimile:  415.434.0882

7 | Attorneys for Defendant THE ULTIMATE SOFTWARE GROUP, INC.

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

10 |

11 | KRISTANALEA DYROFF, individually and
on behalf of the estate of WESLEY GREER, | CASE NO.  3:17-cv-05359-LB

12 | deceased, | **DEFENDANT, THE ULTIMATE**
**SOFTWARE GROUP, INC.'S**

13 |                    Plaintiff, | **MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF**

14 |          vs. | **MOTION TO DISMISS COMPLAINT**
**PURSUANT TO FEDERAL RULE OF**

15 | EXPERIENCE PROJECT; KANJOYA, INC.,
and THE ULTIMATE SOFTWARE GROUP, | **CIVIL PROCEDURE 12(b)(6)**

16 | INC., | **Date:      November 2, 2017**

17 |                    Defendants. | **Time:      9:30 a.m.**
**Crtrm: C, 15th Floor**

18 | | **Magistrate Judge Laurel Beeler**

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |



# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ..................................... 1

II.  STATEMENT OF THE ISSUES ..................................................................................... 1

III.  STATEMENT OF RELEVANT FACTS ......................................................................... 1

    A.  Plaintiff's Key Factual Allegations ..................................................................... 1

    B.  The Experience Project Website .......................................................................... 2

    C.  Hugo Margenat-Castro's Drug Trafficking .......................................................... 3

    D.  Plaintiff's Complaint and Procedural Status ......................................................... 3

IV.  ARGUMENT .................................................................................................................. 3

    A.  Legal Standard ..................................................................................................... 3

    B.  Plaintiff's First, Second, Third, Fifth, Sixth and Seventh Causes of Action
        are Barred by Section 230 of the Communications Decency Act, 47 U.S.C.
        § 230 because these Claims Seek to Hold Defendants Liable as the
        Publishers of Content Posted by Experience Project Users. ................................. 4

        1.  The Communications Decency Act, 47 U.S.C. § 230 ................................. 4

        2.  Defendant Satisfies All of the Requirements for Section 230
            Immunity ................................................................................................. 5

        3.  Websites Are Not Civilly Liable for the Criminal Acts of Its Users ......... 11

    C.  Plaintiff's Fourth Cause of Action for Failure to Warn Should Be Dismissed
        Because: 1) Defendant did Not Owe a Duty to Mr. Greer as a Matter of Law
        and 2) Mr. Greer Assumed the Risk of Engaging in an Obviously
        Dangerous Activity .............................................................................................. 14

        1.  The Central District's Sound Analysis in Doe v. Internet Brands
            Provides Guidance in Concluding that Defendant Did Not Owe a
            Duty to Mr. Greer ................................................................................... 14

        2.  The Failure to Warn Claim Should Be Dismissed Because Plaintiff
            Assumed the Risk of an Obviously Dangerous Activity ........................... 16

    D.  The Motion Should Be Granted Without Leave to Amend Because Plaintiff
        Cannot Amend the Complaint to Avoid Dismissal ................................................ 18

V.  CONCLUSION ............................................................................................................... 19


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ............................................................ 4

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) ................................. 3

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009) ........................................ 8

*Barrett v. Rosenthal*, 40 Cal. 4th 33, 53, 57 (2006) ..................................................... 10

*Beckman v. Match.com*, No. 2:13-CV-00097-JCM-NJK, Doc. No. 43, at *1-2 (Dist. Nev. March 10, 2017).................................................................................................................. 15

*Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. August 13, 2010).............................................................................................................................. 10

*Blumenthal v. Drudge*, 992 F. Supp. 44, 49-53 (D.D.C. 1998).................................... 10

*Bojorquez v. House of Toys, Inc.*, 62 Cal. App. 3d 930 (1976)..................................... 17

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) ..................... 7

*Cohen v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. 2017) ..................... 8

*Conti v. Watchtower Bible & Tract Soc. of N.Y., Inc. 235 Cal. App. 4th (2015)*...................... 15, 16

*Dart v. Craigslist, Inc.*, 665 F. Supp.2d 961 (N.D. Ill. 2009) ................................. 11, 12

*Doe v. Internet Brands, Inc.*, 824 F.3d 846  (9th Cir. 2016) .................................... 14, 15

*Doe v. Internet Brands, Inc., No. 2:12-cv-3626-JFW (PJW), Doc. No. 51, at *1-2 (C.D. Cal. November 14, 2016)* .............................................................................................. 15, 16

*Doe v. Mark Bates & Yahoo!, Inc.*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. December 27, 2006) .................................................................................. 13

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008)...................................................... 13

*Doe v. SexSearch*, 502 F. Supp. 2d 719 (N.D. Ohio 2007) ......................................... 17

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) ............................................................................................................. 8

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1118 (N.D. Cal. 2016) ........................... 9

*Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735 (RMB), 2009 U.S. Dist. LEXIS 53246 at *1-2 (S.D.N.Y. June 15, 2009) ........................................................................................... 11

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................. 10, 11, 18

*Harrold v. Rolling J. Ranch*, 19 Cal. App. 4th 578 (1993) ......................................... 17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Hodges v. Summer Fun Rentals, Inc.*, 203 F. App'x 89 (9th Cir. 2006) .......................................... 17

*Jones v. Bock*, 549 U.S. 199, 215 (2007) ............................................................................................. 4

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) .............................................. 4, 5, 9, 10

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. 2014) ....................................................................... 10

*Knight v. Jewett* (1992) 3 Cal.4th 296 (1992) ................................................................................ 17

*M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041(E.D. Mo. 2011) ........................... 12

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) ................................................................. 4

*Parker v Google, Inc*., 422 F Supp. 2d 492 (E.D. Pa. 2006) ........................................................ 10

*Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326 (9th Cir. 1996) ............................................ 18

*Saul v. United States*, 928 F.2d 829 (9th Cir. 1991) ....................................................................... 18

*Souza v. Squaw Valley Ski Corp.*, 138 Cal. App. 4th 262 (2006) ................................................. 17

*Steckman v. Hart Brewing*, 143 F.3d 1293  (9th Cir. 1998) ........................................................... 18

*Swearingen v. Santa Cruz Natural, Inc.*, no. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 at *33-34 (N.D. Cal. August 17, 2016) ................................................................................................. 4

*Thompson v. County of Alameda*, 27 Cal. 3d 741 (1980) ............................................................. 17

*Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 420 (5th Cir. 2007) ................................. 10

*Zelig v. City. of L.A.*, 27 Cal. 4th 1112 (2002) .............................................................................. 17

### Statutes

18 USCS § 1595 ................................................................................................................................ 12

28 U.S.C. § 1441 ................................................................................................................................ 3

47 U.S.C. § 230 ............................................................................................................. 1, 4, 7, 11-15, 19

47 U.S.C. § 230(b)(2) ......................................................................................................................... 4

47 U.S.C. § 230(f)(2) ......................................................................................................................... 5

47 U.S.C. § 230(f)(3) ......................................................................................................................... 7

### Rules

Federal Rules of Civil Procedure Rule 12(b)(6)  ................................................................... 1, 4, 11

### State Statutes

Cal. Health & Safety Code §§ 11700, et seq. .................................................................................. 3

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                                     iii                                     3:17-cv-05359-LB
TABLE OF AUTHORITIES

1  I.      **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

2         Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and Civil Local Rule 7-2,

3  Defendant moves for an Order dismissing Plaintiff's Complaint on the grounds that it fails to state

4  any claims upon which relief may be granted.

5  II.     **STATEMENT OF THE ISSUES**

6         **1.**    Whether Plaintiff's claims for Negligence, Wrongful Death, Premises Liability,

7                  Civil Conspiracy, Unjust Enrichment and Violations of the Drug Dealer Liability

8                  Act are barred by Section 230 of the Federal Communications Decency Act, 47

9                  U.S.C. § 230;

10        **2.**    Whether Plaintiff's Fourth Cause of Action for Failure to Warn should be

11                 dismissed because a website is not in a special relationship with its users such that

12                 it owes a duty to warn of third party criminal conduct under California law; and

13        **3.**    Whether Plaintiff's Fourth Cause of Action for Failure to Warn should be

14                 dismissed on the separate ground that, under California law, Plaintiff assumed the

15                 risk of engaging in the obviously dangerous activity of purchasing and ingesting

16                 drugs from an anonymous Internet poster.

17 III.    **STATEMENT OF RELEVANT FACTS**

18        **A.**    **Plaintiff's Key Factual Allegations**

19        This case arises out of the death of 29-year-old Wesley Greer on August 19, 2015 from an

20 overdose of heroin allegedly laced with fentanyl. (Plaintiff's Complaint, Dkt. No. 1, Exhibit A

21 ("Complaint") ¶¶ 43, 57, 58.)  Mr. Greer's mother, Kristanalea Dyroff brings this action

22 individually and on behalf of Mr. Greer's estate.  (*Id.* ¶ 11.)  Plaintiff alleges that in or around

23 August, 2015, Mr. Greer conducted a Google search to find heroin in Jacksonville, Florida and

24 was directed to the website Experience Project.  (*Id.* ¶ 49.)  Mr. Greer then created an account with

25 the website under the handle "Gaboy5224" and posted to a group entitled "where can i score

26 heroin in jacksonville, fl."  (*Id.* ¶ 51.)  Another Experience Project user, Hugo Margenat-Castro,

27 an Orlando-based drug dealer, responded to Mr. Greer's post using the handle "Potheadjuice" and

28 Mr. Greer was able to obtain Margenat-Castro's phone number.  (*Id.* ¶¶ 53-55.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                                        1                            3:17-cv-05359-LB

1   Mr. Greer then called Margenat-Castro in the early morning hours of August 18, 2015, and

2   drove from Brunswick, Georgia to meet Margenat-Castro in Orlando, Florida where he allegedly

3   purchased fentanyl before returning home to Brunswick.  (*Id*. ¶ 55.)  On August 19, 2015, Mr.

4   Greer was declared dead of fentanyl toxicity.  (*Id*. ¶ 57.)

5   **B.      The Experience Project Website**

6   Defendant[1] operated and maintained "Experience Project," a social networking website

7   consisting of various online communities. (*Id*. ¶ 18.)  Experience Project's users could submit

8   stories about various life experiences they had and form or join communities based on these

9   experiences or interests, such as "I like dogs," "I have lung cancer," or "I'm going to Stanford."

10  (*Id*. ¶ 18.)  Experience Project users typically register on the site with an anonymous user name

11  and as of May 2016, the website had over sixty-seven million "experiences shared." (*Id*. ¶ 21.)

12  Once users established an account and joined a group or groups, they could ask questions of or

13  answer questions posed by other members.  (*Id*. ¶ 22.)

14  Plaintiff alleges throughout the Complaint that Defendant operated Experience Project in

15  an unlawful manner that facilitated extensive trafficking in illegal drugs, because the website was

16  utilized by drug traffickers, drug dealers and drug addicts.  (*See* e.g., *Id*. ¶¶ 31, 70, 73, 75.)

17  Plaintiff alleges that Defendant: 1) allowed its users to anonymously traffic in illegal substances;

18  2) allowed users to create groups dedicated to the sale and use of narcotics; 3) steered users to

19  additional groups dedicated to the sale of narcotics, and; 4) sent users notifications of other posts

20  in groups dedicated to the sale of deadly narcotics. (*Id*. ¶ 73.)   Plaintiff further alleges that

21  Defendant used advanced data mining algorithms to learn the underlying intent and emotional

22  state behind users' posts and used that information to manipulate individual users and funnel these

23  users to harmful drug trafficking activity.  (*Id*. ¶¶ 2, 3, 38.)  Plaintiff further alleges that Defendant

24

25  _____

26  [1]  In September 2016, Defendant, The Ultimate Software Group, Inc. purchased all of the interests in Experience Project from Kanjoya, Inc. which was then merged with Ultimate (Id. ¶ 13.)
Plaintiff alleges that Defendant Ultimate Software Group has, at all times relevant to this litigation, owned, operated, maintained, controlled and utilized all technology and intellectual property of Defendants Experience Project and Kanjoya.  (*Id*. ¶ 14.)

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                                              2                                        3:17-cv-05359-LB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1  allowed its users to remain active accountholders despite possessing knowledge of this drug

2  trafficking via Defendant's proprietary technology as well as requests for information from law

3  enforcement.  (*Id.* ¶¶ 73, Fn. 13).

4      **C.**    **Hugo Margenat-Castro's Drug Trafficking**

5      Plaintiff alleges that prior to Mr. Greer's death, law enforcement agencies had targeted

6  Margenat-Castro for his drug trafficking through Experience Project by purchasing heroin in

7  controlled buys on March 31, 2015 and June 24, 2015.  (*Id.* ¶ 61.)  On April 1, 2015 and June 25,

8  2015, Margenat-Castro was arrested for possession, with the intent of sale, of fentanyl, among

9  other drugs, stemming from his sale of drugs through Experience Project. (*Id.*)

10      Plaintiff alleges that by August 17, 2015, two days prior to Mr. Greer's death, Defendant

11  would have or should have had actual knowledge of Margenat-Castro's activity on Experience

12  Project, including his trafficking of heroin laced with fentanyl. (*Id.* ¶¶ 63, 66.)  According to

13  Plaintiff, the website received information requests, subpoenas and warrants from law

14  enforcement which should have alerted Defendant to instances of drug trafficking of narcotics on

15  Experience Project by its users, including Margenat-Castro.  (*Id.* ¶¶ 5, 39, 65, 70, Fn. 13.)

16      **D.**    **Plaintiff's Complaint and Procedural Status**

17      Plaintiff filed suit on August 9, 2017 in the San Francisco Superior Court against

18  Experience Project, Kanjoya, Inc., and Ultimate Software Group, Inc., alleging damages in

19  connection with Mr. Greer's death for: 1. Negligence; 2. Wrongful Death; 3. Premises Liability; 4.

20  Failure to Warn; 5. Civil Conspiracy; 6. Unjust Enrichment, and; 7. Damages per the Drug Dealer

21  Liability Act (Cal. Health & Safety Code §§ 11700, et seq.) (*Id.*)

22      On September 15, 2017, Defendant Ultimate Software Group, Inc. removed the action to

23  this Court based on diversity jurisdiction under 28 U.S.C. § 1441. (Dkt. No. 1.)

24  **IV.**    <u>**ARGUMENT**</u>

25      **A.**    **Legal Standard**

26      A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal

27  theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

28  *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering whether the Complaint is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 sufficient to state a claim, the court will take all material allegations as true and construe them in

2 the light most favorable to the plaintiff.  *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.

3 1986).  However, "threadbare recitals of the elements of a Cause of Action, supported by mere

4 conclusory statements," are not taken as true.*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) .

5 To survive a motion to dismiss, a complaint must contain sufficient factual matter,

6 accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* A claim has facial

7 plausibility only when the plaintiff pleads factual content that allows the court to draw the

8 *reasonable inference* that the defendant is liable for the misconduct alleged.  *Id*. at 663.

9 Additionally, a complaint may be subject to dismissal under Rule 12(b)(6) when an

10 affirmative defense appears on its face.  *Jones v. Bock*, 549 U.S. 199, 215 (2007).

11     **B.**    **Plaintiff's First, Second, Third, Fifth, Sixth2 and Seventh Causes of Action are Barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 because these Claims Seek to Hold Defendants Liable as the Publishers of Content Posted by Experience Project Users.**

12

13     **1.**    **The Communications Decency Act, 47 U.S.C. § 230**

14

15 In 1996, the United States Congress passed the Communications Decency Act, 47 U.S.C. §

16 230 ("Section 230"), wherein it declared that "it is the policy of the United States ... to preserve

17 the vibrant and competitive free market that presently exists for the Internet and other interactive

18 computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(2).

19 In connection with this public policy, Section 230 "immunizes providers of interactive

20 computer services against liability arising from content created by third parties."  *Kimzey v. Yelp!*

21 *Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016).  The prototypical service qualifying for [Section 230]

22 immunity is an online messaging board (or bulletin board) on which Internet subscribers post

23 comments and respond to comments posted by others."  *Id.* at 1266.  Since its passage in 1996,

24 Section 230 has consistently barred lawsuits that sought to hold websites liable for user generated

25

26 [2]  Plaintiff's Sixth Cause of Action for "Unjust Enrichment" should also be dismissed with prejudice because the Northern District holds that it is not a standalone cause of action recognized by California law.  *Swearingen v. Santa Cruz Natural, Inc.*, no. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 at *33-34 (N.D. Cal. August 17, 2016).

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

content.

**2.      Defendant Satisfies All of the Requirements for Section 230 Immunity**

In order to qualify for Section 230 immunity, the Defendant must (1) be a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey*, supra, 836 F.3d at 1268.  In this case, Defendant satisfies all three requirements, precluding Plaintiff's First, Second, Third, Fifth, Sixth and Seventh Causes of Action:

**(a)      Defendant is an Interactive Computer Service Provider**

Section 230 broadly defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).  It is undisputed that, as a website operator, Defendant is an interactive computer service provider which enables access by its users to its internet forums.  (*See* Complaint ¶¶ 18, 21.)  *Kimzey, supra*, 836 F.3d at 1268.

**(b)      Defendant is Not an Information Content Provider with Respect to the Disputed Activity because All of the Drug Related Content Was Posted by  Experience Project's Users**

Plaintiff's Complaint alleges that the posts pertaining to drug trafficking and drug transactions originate with various third party drug dealers and drug users, not Experience Project:

- *Specifically, <u>dealers</u> would openly advertise in group with names such as "I Am a Drug Addict," "I Can Help With Connect in Orlando FL," "I AM a Heroin Addict," "I Miss Using Heroin," and "Heroin Heroin Heroin and more Heroin."*  ¶ 3, pg. 2:25-28.

- *Defendant Experience Project is a social networking website, currently owned by Defendant Ultimate Software Group, Inc."  Experience Project was, at all times relevant to this litigation, a social network consisting of various <u>online communities or groups</u>, <u>and allowing its members to anonymously post</u> and answer questions in said communities or groups.* ¶12, pg. 5:1-6.

- *<u>Members would submit "experiences"</u> – their personal, first-person stories about various life experiences they had.  <u>Users could then form or join communities</u> based on these experiences and/or interests, and interact with other members who shared them.* ¶18, pg. 7:4-8.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

- *For example, a screenshot of the following group, titled "I Need Heroin," contains numerous <u>posts in which members offer contact information</u> to sell opiates in and around the Orlando area. ¶27, pg. 10:19-22.*

- *Perversely, <u>users are able to provide "reviews" of drug dealers</u> who traffic on Experience Project, as demonstrated by the following post... ¶31, pg. 12:5-6.*

- *... Experience Project created and nurtured an anonymous environment in which fatally dangerous <u>narcotics were brazenly sold by its users</u>, with no consequences coming from Defendant.  ¶34, pg. 14:15-17.*

- *As described above, <u>membership on Experience Project was premised on the anonymity of its users</u>.  ¶36, pg. 15:6-7.*

- *Similarly, the more users felt that they could <u>post anonymously</u>, the more likely they would perceive Experience Project as an exclusive outlet for their online communications with others.  ¶37, pg. 15:13-18.*

- *As the above letter acknowledges, <u>a core tenet of Experience Project was to provide a space to users</u>...  ¶42, pg. 17:9-10.*

Plaintiff's Complaint is undeniably grounded in allegations seeking to hold Defendant liable for statements made by third parties, not statements made on the Experience Project website by Experience Project.

In addition to the general allegations of drug traffickers', drug buyers' and drug sellers' use of the Experience Project website, the Complaint further alleges and attaches as exhibits printouts of specific postings on Experience Project which were allegedly posted by Mr. Greer and drug dealer Margenat-Castro:

- *...<u>Wesley Greer</u>, a recovering heroin addict who, suffering a relapse, joined Experience Project . . . he encountered the drug dealer <u>Hugo Margenat-Castro</u>, who advertised heroin on the website. ¶7, pg. 4:1-7.*

- *... <u>Wesley Greer</u> contacted <u>Margenat-Castro</u> and purchased what he believed to be heroin. ¶8, pg.4:10-11.*

- *<u>Wesley then posted</u> the to the Experience Project group "where can i score heroin in jacksonville, fl." ¶51, pg. 19:8-9.*

- *... that update—or one substantially similar—<u>was posted by Hugo Margenat-Castro</u>, an Orlando-based drug dealer who maintained an Experience Project account under the handle "Potheadjuice." ¶53, pg. 19:15-18.*

- *<u>Margenat-Castro's Experience Project posts</u> purported to sell heroin—<u>they are posted</u> in groups such as "I Love Heroin" and "Heroin in Orlando"—but in reality Margenat-Castro was selling heroin mixed with fentanyl.  ¶54, pg. 19:19-21.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  • *Under the handle "Potheadjuice," <u>Margenat-Castro actively and routinely used</u>*
2  *<u>Experience Project</u> groups and forums…<u>posting</u> in groups such as "I Love Heroin" and "Heroin in Orlando…"* ¶58, pg. 20:18-24.

3  • *<u>Margenat-Castro's Experience Project profile page</u> shows 1,439 profile views. Beyond*
4  *Wesley's unknowing purchase of a lethal dose of fentanyl 'from Margenat-Castro, virtually all of those <u>1,439 visitors</u> also viewed his page to <u>message and buy drugs from</u>*
5  *<u>Margenat-Castro</u>.* ¶21, pg. 15:19.

6  Here, the second and third requirements set forth in *Kimzey* are satisfied because Plaintiff alleges

7  that third party users of Experience Project created the content which allegedly resulted in Mr.

8  Greer's death.

9       (c)   **Plaintiff's Allegations Regarding Experience Project's**
             **Functionality Does Not Render Defendant an Information**
10            **Content Provider**

11       Section 230 defines an "information content provider" as "any person or entity that is

12  responsible, in whole or in part, for the creation or development of information provided through

13  the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). If an interactive

14  computer service does not function as an information content provider with regard to the

15  statements underlying the lawsuit, that service is entitled to immunity under Section 230.

16  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). "Reviewing courts have

17  treated § 230(c) immunity as quite robust, adopting a…relatively restrictive definition of

18  "information content provider." *Id.*

19       In efforts to plead around Section 230 immunity,    Plaintiff's Complaint alleges that

20  Defendant acted "in a manner that not only touches on the creation of the unlawful content at

21  issue, but also the independent manipulation of their most vulnerable accountholders, based on

22  separate data that Defendant created and maintained, independently." (Complaint ¶74.) The

23  Complaint includes various conclusory allegations that Experience Project utilized a

24  recommendations functionality that "learned the meaning and intent behind posts" and used that

25  information to funnel users into harmful, drug trafficking activity, rendering Defendant an active

26  participant in the events giving rise to Mr. Greer's death.  (Complaint ¶¶ 42, 70, 75.)

27       The Ninth Circuit has examined the parameters of what amounts to "creation and

28  development" and found that if the allegedly harmful content was furnished by third party users,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                7                3:17-cv-05359-LB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1   the website is not liable.  In *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009), the Court

2   found that "providing *neutral* tools to carry out what may be unlawful or illicit does not amount to

3   "development" for these purposes."  In *Barnes*, the Ninth Circuit clarified:

4        …removing content is something publishers do, and to impose liability on the basis
5        of such conduct necessarily involves treating the liable party as a publisher of the
content it failed to remove. . .It is because such conduct is publishing conduct that
**we have insisted that section 230 protects from liability "any activity that can be**
6        **boiled down to deciding whether to exclude material that third parties seek to**
**post online."** [*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009).]

7

8   In *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-

9   75 (9th Cir. 2008) (en banc), the Ninth Circuit also declared:

10        …Websites are complicated enterprises, and **there will always be close cases**
**where a clever lawyer could argue that something the website operator did**
11        **encouraged the illegality. Such close cases, we believe, must be resolved in**
**favor of immunity**, lest we cut the heart out of section 230 by forcing websites to
12        face death by ten thousand duck-bites, fighting off claims that they promoted or
encouraged-or at least tacitly assented to-the illegality of third parties. Where it is
13        very clear that the website directly participates in developing the alleged illegality .
. . immunity will be lost. **But in cases of enhancement by implication or**
14        **development by inference ... section 230 must be interpreted to protect**
**websites not merely from ultimate liability, but from having to fight costly and**
15        **protracted legal battles.** [*Id.*]

16   With this framework in mind, Section 230 has barred a variety of lawsuits alleging that a website

17   was liable for various harms committed by the website's users because the website actively

18   "created and developed" content.

19        **(d)**     **Courts Routinely Find that Conclusory Allegations of Creation**
20                 **and Development Do Not Circumvent Section 230's Immunity**

21       During the summer of 2016, victims of terrorist attacks in Israel, in addition to

22   approximately 20,000 separate Israeli citizens brought suit against Facebook, alleging that the

23   website supported terrorist organizations by allowing these groups and their members to use

24   Facebook's social media platform to advance the terrorists' aims.  *Cohen v. Facebook, Inc.*, 2017

25   U.S. Dist. LEXIS 76701 (E.D.N.Y. 2017).  The *Cohen* plaintiffs' allegations were identical to

26   Plaintiff's claims in this case:

27     -  Facebook collects data as to its users' activities through the website, including but not

28        limited to information regarding contacts and group associations, content that users post

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1             8                  3:17-cv-05359-LB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

and interact with, and use of third party websites.

- Using proprietary algorithms, Facebook generates targeted recommendations for each user, promoting content, websites, advertisements, users, groups, and events that may appeal to a user based on their usage history…In this way, Facebook connects users with other individuals and groups based on projected common interests, activities, contacts, and patterns of usage.

- Facebook also presents users with content posted by other users, groups, and third parties (e.g., advertisers) that is likely to be of interest to them, again based on prior usage history. [*Cohen v. Facebook, Inc.*, No. 16-CV-4453, 2017 U.S. Dist. LEXIS 76701, at *5-6 (E.D.N.Y. May 18, 2017).]

The Court dismissed the suits, finding that "even the most generous reading of their allegations places them squarely within the coverage of Section 230(c)(1)'s grant of immunity." *Id.* at *37 (E.D.N.Y. May 18, 2017).

Similarly, in *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1118 (N.D. Cal. 2016), this Court evaluated claims that Twitter was liable for terrorist activity committed by the Islamic State of Iraq and Syria ("ISIS") because Twitter provided material support to ISIS by knowingly allowing ISIS to sign up for Twitter accounts and utilize Twitter to spread propaganda and raise funds, resulting in the death of two United States contractors.  .  The Court found that "no amount of careful pleading can change the fact that, in substance, plaintiffs aim to hold Twitter liable as a publisher or speaker of ISIS's hateful rhetoric, and that such liability is barred by the CDA." *Id.*

*Kimzey v. Yelp! Inc.* involved plaintiff's claims that the website Yelp! created and developed content by causing a review from another site to appear on its page, providing a star-rating function that transforms user reviews into Yelp's own content, and "caus[ing] [the statements] to appear" as a promotion on Google's search engine.  836 F.3d 1263, 1265-66 (9th Cir. 2016).  The Court determined that "Kimzey apparently hoped to plead around the CDA to advance the same basic argument that the statute plainly bars: that Yelp published user-generated speech that was harmful to Kimzey … Kimzey's effort to circumvent the CDA's protections through 'creative' pleading fails, and the district court did not err in granting Yelp's motion to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  dismiss." *Id.*[3]

2    In *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) plaintiffs alleged that

3  "Google's involvement [in creating the allegedly fraudulent advertisements] was so pervasive that

4  the company controlled much of the underlying commercial activity engaged in by the third-party

5  advertisers" and that Google "not only encourages illegal conduct, [but] collaborates in the

6  development of the illegal content and, effectively, requires its advertiser customers to engage in

7  it." *Id.* at 1196.  The Court reasoned that such allegations do not circumvent Section 230 and

8  _____

9  [3]  Numerous Courts through the country have found that Section 230 bars unfounded claims that the website "created and developed" third party content.

10   • *Parker v Google, Inc.*, 422 F Supp. 2d 492 (E.D. Pa. 2006) (internet service provider was
11     eligible for immunity under § 230 because it merely archived, cached, or provided access
      to content that was created by third parties.)

12   • In *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355 (D.C. 2014), plaintiff sued Facebook for
13     hosting a website page which allegedly called for Muslims to rise up and kill Jewish
14     people and argued that the claims did not arise from Facebook's conduct as a publisher or
       speaker but were based on Facebook's breach of its duties arising from a special
       relationship between Facebook and its users. *Id.* at 1357-1359. The Court concluded:
15     "[t]hat argument does not work." *Id.*

16   • In *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal.
17     August 13, 2010), this Court addressed plaintiffs' arguments that the causes of action were
       based on "defendant's programming" and not third party content. The Court noted that
       defendant's programming does not transform it into the creator of the offending content
18     and dismissed the case based on the Section 230. *Id.* at *7-8.

19   • *Blumenthal v. Drudge*, 992 F. Supp. 44, 49-53 (D.D.C. 1998) (Court noted that Congress
20     made a policy choice by "providing immunity even where the interactive service provider
       has an active, even aggressive role in making available content prepared by others.")

21   • In *Barrett v. Rosenthal*, 40 Cal. 4th 33, 53, 57 (2006), the California Supreme Court found
22     that "the immunity conferred by Section 230 applies even when self-regulation is
       unsuccessful, or completely unattempted," stating that "Notice-based liability for service
23     providers would allow complaining parties to impose substantial burdens on the freedom
       of Internet speech by lodging complaints whenever they were displeased by an online
24     posting."

25   • The First Circuit held that "It is, by now, well established that notice of the unlawful nature
       of the information provided is not enough to make it the service provider's own
26     speech...We confirm that view and join the other courts that have held that Section 230
       immunity applies even after notice of the potentially unlawful nature of the third-party
27     content." *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 420 (5th Cir. 2007).

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1   dismissed the complaint <u>without leave to amend</u> pursuant to Fed. Rule. Civ. Proc. 12(b)(6).  *Id*. at

2   1202.

3          In this case, in addition to allegations regarding Experience Project's recommendations

4   functionality, the Complaint also includes a litany of allegations to portray Defendant as an active

5   participant in a vast drug trafficking enterprise. Plaintiff claims that Defendant manifested a

6   "supportive attitude" towards trafficking, manipulated its users, recommended groups, directed the

7   viewer, "created and nurtured an anonymous environment," alerted addicts of new posts through

8   notification emails, intentionally steered users, and utilized proprietary algorithmic technology.

9   (Complaint, ¶¶ 23-29, 38-42, 70-73.)  Under the well reasoned application of Section 230 by

10  numerous Federal Courts, Plaintiff cannot and does not allege creation and development of

11  content, as it is undisputed that the drug related posts were authored by third party users, not

12  Defendant.

13              **3.      Websites Are Not Civilly Liable for the Criminal Acts of Its Users**

14         Courts have consistently upheld the broad scope of Section 230's civil immunity provision

15  with respect to a variety of circumstances involving allegations of criminal conduct.  This case

16  should be no different.

17                  **(a)      Prostitution**

18         In *Dart v. Craigslist, Inc.*, 665 F. Supp.2d 961 (N.D. Ill. 2009), the Court considered

19  Craigslist's motion to dismiss and without reservation held that Section 230 absolutely immunized

20  Craigslist from a suit brought by the Cook County Sheriff alleging that Craigslist was a nuisance

21  that facilitated prostitution, in violation of federal, state and local laws. *Id*. at 967-968.  The Court

22  concluded that "Sheriff Dart's lengthy complaint relies heavily on a few conclusory allegations to

23  support the contention that Craigslist induces users to post ads for illegal services" and dismissed

24  the suit.  *Id*. at 969.[4]  Similarly, in this case, Plaintiff cannot and does not allege that:

25  _____

26  [4]  In *Gibson v. Craigslist, Inc.*, No. 08 Civ. 7735 (RMB), 2009 U.S. Dist. LEXIS 53246 at *1-2
    (S.D.N.Y. June 15, 2009), the court dismissed another suit where plaintiff claimed that he was

27  shot with a handgun purchased through Craigslist. Plaintiff argued that he was seeking to treat
    Craigslist as a business (not as a publisher or speaker). *Id*. at *8-9.

28



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1      -  Defendant itself (via through a software program or directly via any of its agents or

2          employees) posted the purported phone numbers or other contact information of drug

3          dealers and/or alleged interested drug buyers on any of its forums.

4      -  Defendant itself (via through a software program or directly via any of its agents or

5          employees) posted any communications regarding drugs, e.g., content such as *"I AM a*

6          *Heroin Addict," "I Miss Using Heroin,"* and *"Heroin Heroin Heroin and more Heroin"*[5]

7          or any other content regarding drugs on any of Defendant's forums;

8      -  Defendant actually publishes its own separate content based on its alleged synthesis,

9          analysis and/or data mining of its users third party content;

10              **(b)**     **Sex Trafficking of Children**

11        When a claimant initiates a civil lawsuit for alleged violations of federal criminal law that

12 also allows a private cause of action through a federal law, Section 230 still provides immunity.

13 *M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041, 1054-1056 (E.D. Mo. 2011). In

14 *Village Voice*, plaintiff M.A., a minor, sued website Backpage.com for damages sustained while

15 being sexually trafficked from the age of fourteen. *Id*.

16        M.A. alleged that Backpage.com operated an online classified marketplace which allowed

17 the public to post advertising which included explicit nude photographs of her for sex and

18 Backpage.com directly received fees for each posting from its users, thus facilitating child sex

19 trafficking, in violation of 18 USCS § 1595.[6]  *Id*. at 1044-1045.

20        The Court dismissed the minor's case pursuant to Section 230, finding that "Plaintiff

21 artfully and eloquently attempts to phrase her allegations to avoid the reach of § 230."  *Id*. at 1058.

22 Similarly, in this case, Plaintiff's claims regarding Defendant's steering and manipulation of its

23 users, business model based on data mining and monetizing of user related data fails.

---

24

25  [5]  Complaint ¶ 3.

26  [6]  18 USCS § 1595 provides a civil cause of action to victims of sexual trafficking against any entity that "knowingly benefits financially, or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in [peonage, slavery and

27 trafficking in persons]."

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

(c)      **Child Pornography**

2      Mark Bates was imprisoned for his involvement as a moderator in a group that distributed

3   child pornography through Yahoo.com. *Doe v. Mark Bates & Yahoo!, Inc.*, No. 5:05-CV-91-DF-

4   CMC, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. December 27, 2006). Plaintiffs sued Yahoo,

5   claiming that it knowingly profited from the trafficking of illegal child pornography and the Court

6   barred the claim under Section 230. *Id.* at *6-7. Again, under the same reasoning, Defendant

7   cannot be held liable in this case for the drug related posts of its users.

8

(d)      **Sexual Assaults of Minors**

9      *Julie Doe II, a Minor, et al. v. MySpace Inc.*, 175 Cal. App. 4th 561, 564 (2009) involved

10   four lawsuits brought by six teenage girls – ages 13 to 15 – who were sexually assaulted by older

11   men they met through the networking website, MySpace.com. *Id.*  The Court noted the allegations

12   against MySpace:

13         MySpace has made a decision to not implement reasonable, basic safety precautions
         with regard to protecting young children from sexual predators[.] [¶] MySpace is

14         aware of the dangers that it poses to under-aged minors using [its Web site].
         MySpace is aware that its Web site poses a danger to children, facilitating an

15         astounding number of attempted and actual sexual assaults..." [*Id.*]

16   The Court found that Section 230 barred all claims and concluded that plaintiffs "may sue the

17   third-party user who generated the content, but not the interactive computer service that enabled

18   them to publish the content online." *Id.* at 570.[7]

19      As in *MySpace*, Plaintiff in this case similarly seeks to hold Defendant liable for criminal

20   activity arising out of communications between users of Experience Project – Mr. Greer and

21   Margenat-Castro.  Plaintiff claims that Defendant should be held liable for Mr. Greer's wrongful

22   death due to Mr. Greer's online searches for heroin on Google.com and reliance on the Experience

23   Project website.  Simply put, the First through Third and Fifth through Seventh Causes of Action

24   in this case are absolutely barred by Section 230 as a matter of law.

25

26

27   [7]   The Fifth Circuit upheld dismissal of a separate action against MySpace based on identical
   allegations brought on behalf of a minor.  *Doe v. MySpace Inc.*, 528 F.3d 413, 415 (5th Cir. 2008).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                                    13                              3:17-cv-05359-LB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**C.      Plaintiff's Fourth Cause of Action for Failure to Warn Should Be Dismissed Because: 1) Defendant did Not Owe a Duty to Mr. Greer as a Matter of Law and 2) Mr. Greer Assumed the Risk of Engaging in an Obviously Dangerous Activity**

Plaintiff alleges that Defendant knew of Margenat-Castro's sale of fentanyl laced heroin via information requests from law enforcement and that Margenat-Castro was arrested and criminally charged for selling fentanyl laced heroin in the four months prior to Mr. Greer's alleged drug purchase in August 2015.  (Complaint ¶¶ 5, 39, 41, 61-63.)  Plaintiff's Fourth Cause of Action alleges that "Defendants owed a duty to their users (including Wesley Greer), and that Defendants' failure to warn Wesley Greer of the specific dangers associated with Margenat-Castro," including his practice of selling fentanyl-laced-heroin, amounted to a breach of that duty. (Complaint ¶ 108.)

Plaintiff's claim for Failure to Warn should be dismissed as a matter of law because: 1) a website does not owe a duty to warn of potential criminal conduct by its users, and; 2) Mr. Greer primarily assumed the risk of engaging in an obviously dangerous activity – the purchase and consumption of an illicit drug from an anonymous Internet poster.

**1.      The Central District's Sound Analysis in Doe v. Internet Brands Provides Guidance in Concluding that Defendant Did Not Owe a Duty to Mr. Greer**

In *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 848 (9th Cir. 2016), plaintiff Jane Doe sought to hold the website Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Internet Brand's website, modelmayhem.com.  *Id.*  The Ninth Circuit reviewed the allegations as follows:

> In 2008, Internet Brands purchased Model Mayhem from Donald and Taylor Waitts, the original developers of the site. Shortly after the purchase, Internet Brands learned of how Flanders and Callum were using the website. It is not alleged precisely how Internet Brands obtained that information, but it is alleged that the company "as early as August, 2010, knew that two individuals, Lavont Flanders and Emerson Callum, had been criminally charged in this scheme, and further knew from the criminal charges, the particular details of the scheme, including how MODELMAYHEM.COM had been used in the scheme and its members victimized." [*Id*. at 848-849.]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  In February 2011, several months after Internet Brands allegedly learned about Flanders' criminal

2  activity, Jane Doe met Flanders through the Model Mayhem website and he subsequently drugged,

3  raped and recorded her.  *Id.* at 849.  The Ninth Circuit held that <u>Section 230</u> did not bar plaintiff's

4  claim because "Jane Doe attempts to hold Internet Brands liable for failing to warn her about

5  information it obtained from <u>an outside source</u> about how third parties targeted and lured

6  victims through Model Mayhem."  *Id.* at 850.  In its May 31, 2016 ruling, the Ninth Circuit

7  clarified that it "express[ed] no opinion on the viability of the failure to warn allegations on the

8  merits" and remanded to the District Court for further proceedings.  *Id.*

9       Following remand, the District Court thoroughly evaluated the merits of Jane Doe's

10  Failure to Warn claim within the framework of California negligence law and concluded that

11  Internet Brands did not owe Jane Doe a duty:

12  **The relationship between Jane Doe and Internet Brands, a website operator,**
    **does not fall under any of the well-recognized "special relationships" under**
13  **California law, and the Court has not found, nor have the parties cited, any**
    **case in which courts have found the existence of a "special relationship" or**
14  **imposed a duty under similar or analogous circumstances.**

15  **Based on the existing case law and the application of the *Rowland* factors, the**
    **Court concludes that Internet Brands did not have a "special relationship"**
16  **with Jane Doe and thus did not have a duty to warn her that she was at risk**
    **of being victimized by the rape scheme.**  [*Doe v. Internet Brands, Inc.*, No.
17  2:12-cv-3626-JFW (PJW), Doc. No. 51, at *1-2 (C.D. Cal. November 14, 2016).]

18  The District Court opined that the most analogous case was *Conti v. Watchtower Bible & Tract*

19  *Soc. of N.Y., Inc.*, wherein the California Court of Appeal found that a religious organization did

20  **not** have a duty to inform its congregation that a fellow member was a child molester.  *Id.* at *6

21  (citing *Conti,* supra, 235 Cal. App. 4th at 1214 (2015)).  The Central District's November 21, 2016

22  order dismissed Jane Doe's Complaint, <u>without leave to amend</u>, finding that amendment would be

23  futile because plaintiff would be unable to cure the deficiency.  *Id.* at *7.[8]

24  _____

25  [8]   More recently, in *Beckman v. Match.com*, plaintiff used defendant's online service to meet
    Wade Ridley, who viciously attacked her.  *Beckman v. Match.com*, No. 2:13-CV-00097-JCM-
26  NJK, Doc. No. 43, at *1-2 (Dist. Nev. March 10, 2017).  Plaintiff pled a failure to warn claim,
    alleging that, prior to her assault, the website received complaints that Ridley met and assaulted
27  other women by utilizing the website's services.  *Id.* at *2.  Plaintiff alleged that the website was
28  (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1       Under the reasoning set forth in the Central District's *Internet Brands* decision, plaintiff's

2   failure to warn claim in this case should also be dismissed as a matter of law because Defendant, a

3   website operator, was not in a "special relationship" with any of its anonymous users.  As such,

4   Defendant did not owe Mr. Greer a duty to warn of Margenat-Castro's drug dealing on Experience

5   Project, just as Internet Brands did not owe Jane Doe a duty to warn of Flanders' rape scheme.

6   The District Court in *Internet Brands* recognized that the imposition of a duty on internet service

7   providers to provide warnings regarding the potential criminal acts of its users would simply be

8   untenable and open the floodgates of litigation.  *Doe v. Internet Brands, Inc.*, No. 2:12-cv-3626-

9   JFW (PJW), Doc. No. 51, at *7 (C.D. Cal. November 14, 2016).  Defendant respectfully submits

10  that this Court should follow the same reasoning as employed by the Central District in *Internet*

11  *Brands* and dismiss the Fourth Cause of Action on that basis.

12              **2.      The Failure to Warn Claim Should Be Dismissed Because Plaintiff**
                          **Assumed the Risk of an Obviously Dangerous Activity**
13

14      The plaintiff in *Internet Brands* did not intend to become a rape victim when she met with

15  Flanders for what she believed would be an audition.  In this case, decedent Mr. Greer <u>intended</u> to

16  purchase drugs from Margenat-Castro and allegedly was able to complete his intended purchase

17  after he drove from Brunswick, Georgia to Orlando, Florida.  (Complaint ¶ 55).  There was no

18  duty on the part of Defendant to warn Mr. Greer that purchasing and ingesting drugs from a

19  complete stranger is dangerous and it is unclear what such a warning would have entailed, as Mr.

20  Greer <u>intended</u> to purchase drugs.

21      It is well established in California that "In cases involving 'primary assumption of risk' –

22  where, by virtue of the nature of the activity and the parties' relationship to the activity, the

23  _____

24  in a special relationship with its users because it had "unique access to information" and "utilized
    that data to create 'matches' among its users."  *Id.* at *4.  Plaintiff further alleged that she paid the
25  website a membership fee and was "matched" with Ridley.  *Id.* at *5.  The Court determined that,
    under Nevada law, plaintiff could not establish that she was in a special relationship with the
26  website and dismissed the failure to warn claim.  *Id.* at *5-6.  The Court dismissed plaintiff's
27  remaining causes of action against Match.com pursuant to Section 230.  *Id.* at *2.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury – the doctrine continues to operate as a complete bar to the plaintiff's recovery." *Knight v. Jewett* (1992) 3 Cal.4th 296, 314-315 (1992). There is no duty to warn if "the danger, or potentiality of danger is generally known and recognized." *Bojorquez v. House of Toys, Inc.*, 62 Cal. App. 3d 930, 933 (1976). This doctrine has been applied in a variety of situations where the plaintiff undertakes an activity that is obviously dangerous and avoidable. For example, in *Souza v. Squaw Valley Ski Corp.*, 138 Cal. App. 4th 262, 268-271 (2006), the Court dismissed plaintiff's claim that a ski resort failed to warn of a hydrant, reasoning that it was obviously dangerous. In *Harrold v. Rolling J. Ranch*, 19 Cal. App. 4th 578, 587-588 (1993) the Court of Appeal upheld dismissal of all claims, including failure to warn, finding that plaintiff primarily assumed the risk of horseback riding.[9]

In this case, the facts as pled in the Complaint confirm that Mr. Greer voluntarily pursued and wholly assumed the risk of the illegal and inherently dangerous activity of purchasing heroin from an anonymous Internet poster. Any reasonable person would find such an activity to be exceedingly perilous. *Thompson v. County of Alameda*, 27 Cal. 3d 741, 755 (1980) ("In our view, the generalized warnings sought to be required here would do little to increase the precautions of any particular members of the public who already may have become conditioned to locking their doors, avoiding dark and deserted streets, instructing their children to beware of strangers and taking other precautions.") See also *Doe v. SexSearch*, 502 F. Supp. 2d 719, 737 (N.D. Ohio 2007) (internet anonymity is an open and obvious danger.).

Purchasing heroin from an anonymous Internet poster poses an obvious and serious danger, including that of overdosing, about which reasonable minds cannot differ. Consequently, the Failure to Warn claim should be dismissed because Mr. Greer purposefully undertook the risk

---

[9] The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion. *Zelig v. City of L.A.*, 27 Cal. 4th 1112, 1118 (2002); *Hodges v. Summer Fun Rentals, Inc.*, 203 F. App'x 89, 91 (9th Cir. 2006).


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

of this obviously hazardous activity.

**D.    The Motion Should Be Granted Without Leave to Amend Because Plaintiff Cannot Amend the Complaint to Avoid Dismissal**

Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which amendment would be an exercise in futility, *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996), or where the amended complaint would also be subject to dismissal, *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). See also *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) (upholding dismissal of the original complaint, with prejudice, because any amendment would be an exercise in futility.)

This is precisely the type of case which warrants dismissal <u>without</u> leave to amend because there is no conceivable amendment which would change the underlying facts that: 1) the posts on Experience Project that allegedly resulted in the drug transaction leading to Mr. Greer's death were authored by Mr. Greer, Margenat-Castro and other alleged drug traffickers and drug users,[10] and; 2) Mr. Greer was actively searching the Internet for illegal drugs to purchase and use. Both of these key underlying facts that Plaintiff has alleged are further evidenced by the website printouts of Mr. Greer's postings on the Experience Project which were attached to the Complaint, as all are taken as true for purposes of this motion to dismiss.

There is no reasonable method by which Plaintiff can amend her claims such that an amended complaint would fall outside the reach of the immunity provided by Section 230. Likewise, no amendment could alter the alleged circumstances regarding Mr. Greer's use of the Experience Project website to purposefully buy illicit drugs, such that a duty to warn could conceivably be asserted. The Complaint should therefore be dismissed without leave to amend.

---

[10] In *Goddard v. Google*, this Court dismissed plaintiff's initial complaint based on Section 230, without leave to amend, reasoning that "'[b]ecause the CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles,' … this Court's conclusion that Plaintiff almost certainly will be unable to state a claim compels the additional conclusion that Google must be extricated from this lawsuit now lest the CDA's 'robust' protections be eroded by further litigation." *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1202 (N.D. Cal. 2009).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4833-2403-7200.1                                                         18                                      3:17-cv-05359-LB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## V.   <u>CONCLUSION</u>

This Court should dismiss Defendant from this action, with prejudice, as the First through Third and Fifth through Seventh Causes of Action are absolutely barred by Section 230 and supporting authorities.

Plaintiff's Fourth Cause of Action for Failure to Warn should also be dismissed without leave to amend because Defendant website was not in a special relationship with its users and the purchase and consumption of a substance marketed as heroin from an anonymous online poster is an open and obvious danger about which reasonable minds cannot differ.

DATED: September 22, 2017                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By:  _____*/s/ David E. Russo*_____
                    Shawn A. Toliver
                    David E. Russo
                    Justin S. Kim
                    Attorneys for Defendant
                    THE ULTIMATE SOFTWARE GROUP, INC.



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)