**LEWIS BRISBOIS BISGAARD & SMITH** LLP
SHAWN A. TOLIVER, SB# 148349
  Email: Shawn.Toliver@lewisbrisbois.com
DAVID E. RUSSO, SB# 112023
  Email: David.Russo@lewisbrisbois.com
JUSTIN S. KIM, SB# 255980
  Email: Justin.Kim@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile:  415.434.0882

Attorneys for Defendant
THE ULTIMATE SOFTWARE GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KRISTANALEA DYROFF, individually and on behalf of the estate of WESLEY GREER, deceased,<br><br>           Plaintiff,<br><br>      vs.<br><br>EXPERIENCE PROJECT; KANJOYA, INC., and THE ULTIMATE SOFTWARE GROUP, INC.,<br><br>           Defendants. | CASE NO.  3:17-cv-05359-LB<br><br>**DEFENDANT THE ULTIMATE SOFTWARE GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>**Date:      November 2, 2017**<br>**Time:      9:30 a.m.**<br>**Crtrm: C, 15th Floor**<br>**Magistrate Judge Laurel Beeler** |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................... i, ii

TABLE OF AUTHORITIES .......................................................................................iii, iiiv

I. INTRODUCTION ................................................................................................... 1

II. PLAINTIFF DOES NOT PROVIDE ANY AUTHORITY SUPPORTING HER CONTENTION THAT SECTION 230 DOES NOT BAR THE 1ST, 2ND, 3RD, 5TH 6TH AND 7TH CAUSES OF ACTION .................................................................. 3

    A. The Ninth Circuit's Holding in *Fair Hous. Council v. Roommates.com* Confirms that Section 230 Bars Plaintiff's Claims ...................................... 3

    B. The Specific Features of Experience Project that Plaintiff Claims Constitute Creation and Development Have Already Been Found to Be Neutral Tools ........... 6

        1. Using Data Mining Algorithms to Learn the Meaning and Intent Behind Posts, and In the Process Making Its Own Content (Opp. pg. 12: 8-9) ................................................................................................... 7

        2. Using That Derived Information to Manipulate Individual Users and Funnel Them Into Pockets of Activity on the Website, Including Harmful Drug-Trafficking Activity (Opp. pg.12:10-12) ............................. 7

        3. Shielding Bad Actors From Law Enforcement Requests … Developing Policies and Procedures (and Engineering Its Software) to Effectuate These Goals" (Opposition, pg. 12:12-16.) ............................. 8

    C. Plaintiff's Claim That She is Seeking to Hold Defendant Liable for Its Own Conduct, Not the User Generated Content, Fails ....................................... 8

    D. There is No Reason to Delay Disposition of This Case When the Facts as Pled Are Straightforward and All Implicate Third Party Content ......................... 11

III. PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO WARN SHOULD BE DISMISSED ................................................................................. 12

    A. There is No Support for Plaintiff's Claim That a Special Relationship Existed Between Mr. Greer and Defendant ........................................... 12

    B. Secondary Assumption of Risk Does Not Apply Because Defendant Did Not Owe Mr. Greer a Duty ..................................................................... 13

    C. Assumption of Risk Can Be a Question of Law When the Facts Are Clear, Such as in This Case ........................................................................... 14

| | | |
|---|---|---:|
| IV. | PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT DUE TO THE ABSENCE OF ANY POTENTIAL FOR LIABILITY ................................................................................................................. | 15 |
| V. | CONCLUSION ............................................................................................................. | 15 |



# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Anthony v. Yahoo! Inc.*, 421 F.Supp.2d 1257 (N.D. Cal. 2006) ...................................................... 6

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ................................................................ 9

*Beckman v. Match.com*, No. 2:13-CV-00097-JCM-NJK, Doc. No. 43
    (Dist. Nev. March 10, 2017) ............................................................................................... 13

*Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905
    (N.D. Cal. August 13, 2010) ............................................................................................... 10

*City of Chicago v. StubHub!, Inc.*, 624 F.3d 363 (7th Cir. 2010) ...................................................... 5

*Cohen v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. 2017) .............................. 1, 7, 9

*Compuserve Inc. v. Cyber Promotions*, 962 F. Supp. 1015 (S.D. Ohio 1997) .............................. 13

*Conti v. Watchtower Bible & Tract Soc.*, 235 Cal. App. 4th 1214 (2015) ....................................... 13

*Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961 (2008) ................................................................. 1, 8

*Digby Adler Group, LLC v. Mercedes-Benz U.S.A.*, 2015 U.S. Dist. LEXIS 45523 at *25
    (N.D. Cal. Apr. 7, 2015) ..................................................................................................... 14

*Doe II v. MySpace* 175 Cal. App. 4th 561(2009) ................................................................... 1, 10

*Doe v. Backpage.com, LLC*, 104 F.Supp.3d 149 (2015) .............................................................. 8

*Doe v. Backpage.com, LLC,* 817 F.3d 12 (2016) ........................................................................ 8

*Doe v. Internet Brands, Inc.*, No. 2:12-cv-3626-JFW (PJW), Doc. No. 51, at *7
    (C.D. Cal. November 14, 2016) .......................................................................................... 13

*Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .................................... 12

*Fair Hous. Council v. Roommates.com, LLC,* 521 F.3d 1157 (9th Cir. 2012) ......................... 3-8, 12

*Fields v. Twitter, 217 f. Supp.3d 116 (2016)* ............................................................................ 1, 9

*FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009) ............................................................. 5

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2008) ............................................... 14

*Hare v. Richie*, 2012 U.S. Dist. LEXIS 122893 at *3-4 (D. Md. Aug. 29, 2012) .......................... 11

*J.S. v. Village Voice Media Holdings,* 184 Wash 2d 95, 103 (2015) ............................................. 8

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) .................................................................. 10

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. 2014) ................................................................. 10

| | | |
|---|---|---|
| 1 | *Knight v. Jewett*, 3 Cal. 4th 296 (1992) | 14 |
| 2 | *Lansing v. Southwest Airlines Co.*, 980 N.E.2d 630 (Ill. App. Ct. 2012) | 5 |
| 3 | *M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) | 1, 8 |
| 4 | *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2008 U.S. Dist. LEXIS 79200, at *1, 24 (C.D. Cal. July 16, 2008) | 11 |
| 5 | *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840 (N.D. Ca. 2012) | 11 |
| 6 | *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d. Cir. 2004) | 13 |
| 7 | *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968) | 13 |
| 8 | *Steckman v. Hart Brewing*, 143 F.3d 1293 (9th Cir.1998) | 15 |
| 9 | *Swift v. Zynga Game Network, Inc.*, No. C09-05443 SBA, 2010 U.S. Dist. LEXIS 117355 at *1-8, 11-13 (N.D. Ca. Nov. 2, 2010) | 11 |
| 10 | *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996) | 13 |
| 11 | *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413 (2007) | 10 |
| 12 | *Witkoff v. Topix, LLC*, B257656, 2015 Cal.App.Unpub. LEXIS 6521(September 10, 2015) | 10 |
| 13 | *Zelig v. City. of L.A.*, 27 Cal. 4th 1112 (2002) | 15 |

**Statutes**

| | |
|---|---|
| 42 U.S.C. § 3601 | 3 |
| 47 U.S.C. § 230 | 1 |
| 47 U.S.C. § 230(b)(1) | 15 |



Defendant THE ULTIMATE SOFTWARE GROUP, INC. ("Defendant") respectfully submits the following reply to Plaintiff KRISTANALEA DYROFF's ("Plaintiff") opposition (Dkt. No. 15) to Defendant's Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) (Dkt. No. 13).

## I.   INTRODUCTION

Plaintiff filed this wrongful death action alleging that Defendant's social networking website, Experience Project, caused 29-year-old Wesley Greer to contact an anonymous drug dealer, Hugo Margenat-Castro.  Plaintiff admits that Mr. Greer voluntarily joined the website, actively searched for drug dealers, and then subsequently drove from Brunswick, Georgia to Orlando, Florida to meet Margenat-Castro and purchased heroin from him.  Plaintiff's allegations do not change the undisputed fact shown on the face of the Complaint that Defendant did not author the posts that allegedly led to Mr. Greer's death.

Plaintiff attempts to argue that the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") does not bar the First through Third and Fifth through Seventh Causes of Action. Plaintiff simply turns a blind eye to the applicable cases which confirm that websites such as Experience Project are not liable for the communications between its users or for any unlawful acts committed by its users.  As an alternative to directly addressing these authorities, Plaintiff attempts to "plead around" Section 230's immunity by taking the position that she seeks to hold Defendant liable for its own alleged misfeasance, not the user generated content which gave rise to her wrongful death claim.  Plaintiff avers that the prior decisions analyzing Section 230 are distinguishable from this case because she has included allegations that implicate Defendant's separate wrongful conduct.  As shown herein, Courts have reviewed and rejected such attempts to "plead around" Section 230 when it is shown in the Complaint that the harm for which the claimant seeks redress originates with third parties.

Pursuant to the analogous cases applying Section 230, including *Cohen v. Facebook*, *Fields v. Twitter*, *Dart v. Craigslist*, *M.A. v. Village Voice* and *Doe II v. MySpace* and the Ninth Circuit's holding in *Roommates.com*, Defendant did not materially create and develop content in a manner that would classify it as an information content provider.  The Complaint's creative

1  description of Experience Project's recommendations functionality, email notifications, and other
2  <u>neutral</u> tools as "push notifications" that "steered addicts" into "an echo chamber of vulnerable
3  temptation," does not transform Defendant into an information content provider.  Similarly,
4  Plaintiff's allegations that Defendant was non-responsive to requests for information from law
5  enforcement and "shielded bad actors" do not render Defendant a material contributor to the
6  allegedly harmful content posted by third parties.

7  The Fourth Cause of Action for failure to warn should also be dismissed because
8  Defendant did not owe Mr. Greer a duty.  Plaintiff requests that this Court determine that a special
9  relationship exists between a website and its users on the grounds that a website is the modern
10 equivalent of a brick and mortar establishment such as a restaurant.  Such a drastic and
11 unsustainable extension of tort law would have profound implications not only in this Circuit but
12 in the entire country, as every website would be potentially liable for the voluntary and sometimes
13 criminal conduct of its users.  The only two courts that have been presented with such a
14 proposition properly declined to create such an impractical and unjust rule of law.

15 The failure to warn claim is also subject to dismissal on the separate ground that Mr. Greer
16 primarily assumed the risk of an inherently dangerous and unlawful activity which he intentionally
17 pursued.  On these allegations, the Court can properly find that the claim is barred as a matter of
18 law at this stage.

19 Finally, Plaintiff should not be granted leave to amend because the facts, as pled on the
20 face of the Complaint, bar all of the causes of action.  Plaintiff has not shown how she would
21 amend the Complaint in a manner that would avoid the reach of Section 230 or the impact of Mr.
22 Greer's purposefully assumed risk.  Any amendment would be futile and the Court should grant
23 the Motion in its entirety without leave to amend.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

II. **PLAINTIFF DOES NOT PROVIDE ANY AUTHORITY SUPPORTING HER CONTENTION THAT SECTION 230 DOES NOT BAR THE 1ST, 2ND, 3RD, 5TH 6TH AND 7TH CAUSES OF ACTION**

    A.    **The Ninth Circuit's Holding in *Fair Hous. Council v. Roommates.com* Confirms that Section 230 Bars Plaintiff's Claims**

Plaintiff mistakenly claims that her allegations pertaining to Defendant's creation and development of content classify Defendant as an information content provider pursuant to *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2012) a seminal 2008 ruling wherein the Ninth Circuit provided a lengthy and thoughtful analysis of Section 230's application. Review of the Court's reasoning in *Roommates* confirms that Defendant is entitled to Section 230 immunity in this case.

In *Roommates*, The Fair Housing Council of San Fernando Valley sued Roommates.com, alleging that the website violated the Fair Housing Act, 42 U.S.C. § 3601, which prohibits certain forms of discrimination based on race, color, religion, sex, familial status or national origin. *Id*. at 1162. Roommates.com was a website designed to match people renting out spare rooms with people looking for a place to live. *Id*. at 1161. Before a subscriber could search listings or post housing opportunities, the subscriber was required to disclose his or her sex, sexual orientation and whether the user would bring children to the household, as well as the user's preferences with respect to the same three criteria. *Id*. The Court found that "the CDA does not grant immunity for inducing third parties to express illegal preferences. Roommate's own acts – posting the questionnaire and requiring answers to it – are entirely its doing and thus Section 230 of the CDA does not apply." *Id*. at 1165.

The Court analyzed claims that Roommates developed the discriminatory content by requiring its users to disclose whether there are currently "Straight male(s)," "Gay males," "straight female(s) or "Lesbian(s)" living in the dwelling and whether they would be willing to live with "Straight or gay" males, only with "Straight" males, only with "Gay" males or with "No males." *Id*. at 1165. Roommates further required subscribers listing housing to disclose whether there were children present in the household. *Id*. The Court found:

> By requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information. And section 230 provides immunity only if the interactive computer service does not "creat[e] or develop[ ]" the information "in whole or in part." [*Id*. at 1166.]

The Court emphasized that "Roommate's work in developing the discriminatory questions, discriminatory answers and discriminatory search mechanism is directly related to the alleged illegality of the site" and resulted in "enforcing a system that subjects subscribers to allegedly discriminatory housing practices." *Id.* at. 1172.

The Ninth Circuit separately addressed The Fair Housing Council's claim that Roommates should be liable for the discriminatory statements displayed in the "Additional Comments" section of Roommates' subscribers' profile pages. *Id*. at 1173.  When a subscriber registered to use Roommates' services, Roommates prompted its subscribers to "take a moment to personalize your profile by writing a paragraph or two describing yourself and what you are looking for in a roommate." *Id*. at 1173.  The Court observed that "subscribers provide a variety of provocative, and often very revealing answers" ranging from "subscribers who '[p]ref[er] white Male roommates' or require that '[t]he person applying for the room MUST be a BLACK GAY MALE' to those who are 'NOT looking for black muslims." *Id*.  The Court rejected The Fair Housing Council's claim that this function encouraged users to publish discriminatory preferences:

> Roommate publishes these comments as written. It does not provide any specific guidance as to what the essay should contain, nor does it urge subscribers to input discriminatory preferences. Roommate is not responsible, in whole or in part, for the development of this content, which comes entirely from subscribers and is passively displayed by Roommate. Without reviewing every essay, Roommate would have no way to distinguish unlawful discriminatory preferences from perfectly legitimate statements. Nor can there be any doubt that this information was tendered to Roommate for publication online. **This is precisely the kind of situation for which section 230 was designed to provide immunity.** [*Id*. at 1173-1174.]  [Emphasis added.]

The Ninth Circuit concluded its majority opinion in *Roommates* with additional guidance as to how to determine whether a website materially contributed to content creation:

> Where it is very clear that the website directly participates in developing the alleged illegality--as it is clear here with respect to Roommate's questions, answers and the resulting profile pages--immunity will be lost.

> **But in cases of enhancement by implication or development by inference--such as with respect to the "Additional Comments" here--section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles**. [*Id.* at 1174-1175]. [Emphasis added.]

In sharp contrast to the Roommates.com website, Experience Project did not require that certain content be posted. Further, Experience Project did not provide any guidance or suggestions as to the substance of what its users should post. It did not require certain information. Plaintiff repeats numerous conclusory allegations throughout the Complaint, for example, that Defendant "steered," "encouraged," "directed," "guided," "manipulated" and "funneled" its users to groups dedicated to the sale of narcotics.[1] At best, such allegations amount to "enhancement by implication or development by inference" which the Court in *Roommates.com* explained is not actionable.[2]

     Plaintiff portrays Experience Project as an online drug bazaar to suggest that Defendant materially contributed to the development and creation of the alleged drug related posts. Notably, Experience Project was a social networking website consisting of various online communities wherein users could submit stories about various life experiences they had and form or join communities based on these experiences or interests, such as "I like dogs," "I have lung cancer," or "I'm going to Stanford." (Complaint ¶ 49.) *Roommate* held that "providing <u>neutral tools</u> to carry out what may be unlawful or illicit searches does not amount to development," and clarified that if an individual uses an ordinary search engine to query for a "white roommate," the search engine has not contributed to any alleged unlawfulness in the individual's conduct. *Roommates.com*, supra, at 1169. Similarly, here, Defendant maintained a website which provided

---

[1]    *See* e.g., Complaint ¶ ¶ 2-3, 6, 27, 28, 38, 42, 59, 70, 73, 75, 107, 94, 97, 107, 114.

[2]    Plaintiff cites additional cases in support of her contention that Defendant developed content. (Opp. pg. 10:19-27). Brief review of these cases indicate that none provide any guidance for this Court: *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009) (conversion of the legally protected records from confidential material to publicly exposed information not protected); *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363 (7th Cir. 2010) (whether City can tax internet auction site); *Lansing v. Southwest Airlines Co.*, 980 N.E.2d 630, 639 (Ill. App. Ct. 2012) (Section 230 did not apply to negligent supervision claim against Southwest when harasser used Southwest's computer, Internet and phone to harass plaintiff).

neutral tools for its users to search for myriad topics of discussion.  This is a classic situation for Section 230's application.

The posts on Experience Project were equivalent to the "Additional Comments" function of Roommates' website because: Experience Project published the user posts in the same manner they were posted – without any revision, as shown in the Exhibits attached to Plaintiff's Complaint; Experience Project did not provide any specific guidance as to what the user's posts should contain, nor did it urge its users to input illegal content; the user's posts came directly from the users and was passively displayed on the website, and; without reviewing every post on Experience Project, Defendant would have no way to even attempt to distinguish allegedly harmful content.  *Roommates*, supra, 521 F.3d at 1173-1174.  *Roommates* confirms that Section 230 absolutely bars Plaintiff's First through Third and Fifth through Seventh Causes of Action in this case.[3]

B. **The Specific Features of Experience Project that Plaintiff Claims Constitute Creation and Development Have Already Been Found to Be Neutral Tools**

The Opposition identifies the features of Experience Project (Opp. pg. 12:4-16) which Plaintiff claims Defendant materially developed.  As set forth below, Courts have previously evaluated similar claims and found that similar websites remain immune from liability.

/ / /

/ / /

/ / /

---

[3] Plaintiff also erroneously cites *Anthony v. Yahoo! Inc*., 421 F.Supp.2d 1257 (N.D. Cal. 2006) to support its claim that Defendant is an information content provider. (Opp. pg. 9:20-10:19) Plaintiff Anthony alleged that, in connection with its on-line dating services, Yahoo! created false and non-existent user profiles and then sent these profiles to subscribers to the dating service that were about to expire in an effort to convince the subscriber to renew their subscription.  *Id*. at 1259, 1261.  Yahoo! also allegedly sent profiles created by legitimate former subscribers whose subscriptions had lapsed to current members of the service.  *Id*.  This Court found the Section 230 did not bar claims for fraud and negligent misrepresentation because claimant was seeking to hold Yahoo! liable for sending the profiles of the former subscribers to the subscribers whose subscription was about to lapse.  *Id*. at 1264.  The user profiles that Yahoo! was sending to its users are inapplicable to the email notifications of third party user posts allegedly generated by Experience Project to notify users when another user posted to the discussion thread.

### 1. Using Data Mining Algorithms to Learn the Meaning and Intent Behind Posts, and In the Process Making Its Own Content (Opp. pg. 12: 8-9)

Plaintiff claims that *Cohen v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. 2017) is inapplicable because the conduct addressed in *Cohen* "was Facebook's policy of allowing known or suspected members of Hamas to be accountholders, and nothing more." (Opp. pg. 14:8-9) Even cursory perusal of *Cohen* shows that the claimants submitted virtually identical allegations that Facebook created and developed content.[4] The Court dismissed the suit, finding that "even the most generous reading of their allegations places them squarely within the coverage of Section 230(c)(1)'s grant of immunity." *Id*. at *37 (E.D.N.Y. May 18, 2017).

### 2. Using That Derived Information to Manipulate Individual Users and Funnel Them Into Pockets of Activity on the Website, Including Harmful Drug-Trafficking Activity (Opp. pg.12:10-12)

The Opposition admits that the Recommendations functionality of Experience Project was comprised of providing links to additional webpages containing content that was related to the post, as displayed in ¶ 27 and Exhibit 1 of the Complaint. (Opp. pg. 15:27-16:2) Under *Cohen*, providing such links based on user history does not amount to creation of content. Per *Roommates*, this Recommendations functionality does not amount to creation and development because it was, on its face, a neutral tool. *Roommates*, supra, 521 F.3d at 1169, 1175. Additionally, the "push notifications" refer to emails that were sent to users to alert a user when another user responded to a post. (Complaint ¶ 70, Exhibit 3). This feature was also a neutral tool

---

[4] Claimant's allegations in *Cohen* are referenced in detail in the opinion and merit this Court's scrutiny due to the similarities to this case. The allegations include the following, verbatim:

> Facebook collects data as to its users' activities through the website, including but not limited to information regarding contacts and group associations, content that users post and interact with, and use of third party websites…Using proprietary algorithms, Facebook generates targeted recommendations for each user, promoting content, websites, advertisements, users, groups, and events that may appeal to a user based on their usage history...In this way, Facebook connects users with other individuals and groups based on projected common interests, activities, contacts, and patterns of usage...Facebook also presents users with content posted by other users, groups, and third parties (e.g., advertisers) that is likely to be of interest to them, again based on prior usage history. [*Cohen*, supra, at *5.]

on the website and therefore not actionable under *Roommates*. *Id*.

       **3.**    **Shielding Bad Actors From Law Enforcement Requests … Developing Policies and Procedures (and Engineering Its Software) to Effectuate These Goals" (Opposition, pg. 12:12-16.)**

Plaintiff's allegations that Defendant was nonresponsive to information requests from law enforcement do not render Defendant a material contributor of the drug related posts. The federal cases involving the website Backpage.com are particularly instructive in this regard, as the Court was confronted with allegations that Backpage.com intentionally concealed the widespread and illegal child sex trafficking occurring on its website which included making *misrepresentations* to law enforcement. *Doe v. Backpage.com, LLC*, 104 F.Supp.3d 149, 158 (2015). The First Circuit provided additional analysis and affirmed the District Court's findings. *Doe v. Backpage.com, LLC*, 817 F.3d 12 (2016). In *M.A. v. Village Voice Media Holdings*, 809 F. Supp. 2d 1041, 1054-1056 (E.D. Mo. 2011), a separate Court also reviewed extensive allegations regarding Backpage.com's misfeasance in connection with the trafficking of two minors which included claims that Backpage.com offered instructions to sex traffickers regarding how to post ads and pay anonymously. *Id*. at 1043-145. Both of these cases were dismissed pursuant to Section 230.[5]

Additionally, *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-968 (2008) involved allegations by the Sheriff of Cook County that the website Craigslist itself violated criminal laws prohibiting prostitution and related offenses and that Craigslist further induced its users to post unlawful advertisements. *Dart* was also dismissed pursuant to Section 230. *Id*.

    **C.**    **Plaintiff's Claim That She is Seeking to Hold Defendant Liable for Its Own Conduct, Not the User Generated Content, Fails**

Plaintiff offers the blanket assertion that the application of Section 230 as set forth in the cases referenced by Defendant are inapplicable because in this case, she challenges Defendant's

---

[5] Plaintiff relies on another case against Backpage.com wherein the Washington State Supreme Court found that Section 230 did not bar claims at the pleading stage and further fact finding was necessary. *J.S. v. Village Voice Media Holdings*, 184 Wash 2d 95, 103 (2015). Among all of the federal and states courts, this decision is an anomaly because it applied an improperly restrictive view of Section 230 immunity which was inconsistent with the federal cases that adhere to the maxim that Section 230 must be broadly construed. *Roommates*, supra, 521 F. 3d 1175.



1  separate conduct of intentionally engineering its site to "steer [Wesley Greer] to myriad heroin-
2  trafficking groups." (Opp. pg. 12:17-13:13)  Plaintiff states that she seeks to hold Defendant
3  liable, not for the third party content, but for its separate alleged "acts and practices developing
4  content and putting users in danger through its self-serving functionality." (Opp. pg. 14:16-18.)
5  Plaintiff takes the position that because the Complaint includes allegations of misfeasance by
6  Defendant, this case is somehow different from the myriad other cases referenced in the Motion.[6]

7        This attempted misdirection should be rejected. Despite Plaintiff's claims, the Complaint
8  is squarely grounded in allegations of third party posts and the gravamen of the harm originated
9  with the communications allegedly authored by Experience Project's users. Courts have
10 consistently rejected assertions that the claimant is challenging the activities of the website itself,
11 not user generated content in similar contexts:

- *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-1103 (9th Cir. 2009) (" [I]n other words, the duty that Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher")[7]

- In *Fields v. Twitter*, this Court similarly recognized that "plaintiffs attempt to plead around the CDA by asserting that Twitter provided ISIS with material support by allowing ISIS members to sign up for accounts, not by allowing them to publish content. But no amount of careful pleading can change the fact that, in substance, plaintiffs aim to hold Twitter liable as a publisher or speaker of ISIS's hateful

---

[6] Plaintiff also states that her claims "cannot be reduced to simply challenging Experience Project's decision to allow drug traffickers to establish accounts and use its platform." (Opp. pg. 14:23-25.) Further, according to Plaintiff, none of the referenced authorities provide any guidance for this Court simply because "they dealt with a theory of notice liability (i.e., simply failing to remove objectionable content once becoming aware of the content – a theory not before the Court) and/or dealt with materially different facts." (Opp. pg. 16:9-12.) This is false, as shown from review of the referenced cases.

[7] The Court in *Cohen* further articulated the rationale set forth in *Barnes*: "this guidance emphasizes that Section 230(c)(1) is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party communications." *Cohen v. Facebook*, Inc., 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. May 18, 2017) at *27-28.



4819-2006-7409.1      9      3:17-cv-05359-LB
DEFENDANT THE ULTIMATE SOFTWARE GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

rhetoric." 217 F. Supp. 3d 116, 1121-1122 (2016).

- *Doe II v. MySpace* 175 Cal. App. 4th 561, 573 (2009) rejected the minor plaintiffs' claims that they were not seeking to hold MySpace liable for third party content and concluded that Plaintiffs "want MySpace to ensure that sexual predators do not gain access to (i.e., communicate with) minors on its Web site."[8]

- *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 418 (2007) ("UCS has attempted to plead around that immunity by casting its claims only in terms of Lycos's actions".)

- *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016). (rejecting claim that Yelp "published user-generated speech").

- *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-1359 (D.C. 2014) (rejects argument that claim arises from a special relationship between Facebook and its users).

- In *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. August 13, 2010) (action allegedly based on "defendant's programming," not third party content.)

In this case, Plaintiff seeks to hold Defendant liable for the third party communications between the alleged drug dealers, drug sellers and drug buyers, including Mr. Greer and Mr. Margenat-Castro.[9] Plaintiff's attempt to characterize her Complaint as seeking to hold Defendant liable for its separate actions, not as a publisher of the third party content, defies logic because the primary

---

[8] In violation of Northern District Local Rule 3-4(e), Plaintiff discusses, at length, an unpublished opinion from the Second Appellate District, *Witkoff v. Topix, LLC*, B257656, 2015 Cal.App.Unpub. LEXIS 6521(September 10, 2015), omitted from Defendant's Motion. (Opp. pg. 11:26-12:27.) In *Witkoff*, pursuant to Section 230, the Court dismissed wrongful death claims by the parents of a teenager who overdosed from Oxycodone purchased from a drug dealer whom the teenager allegedly met through the defendant's website. Plaintiff claims that the allegations in *Witkoff*'s complaint were different from the allegations pled in this case, rendering *Witkoff* distinguishable. While being mindful of Local Rule 3-4(e), Defendant responds that *Witkoff* was properly decided.

[9] See references to third party content in the Complaint at ¶ 3, pg. 2:25-28; ¶ 4, pg. 3:3-4; ¶7, pg. 4:1-7; ¶8, pg.4:8-11; ¶12, pg. 5:1-6; ¶18, pg. 7:3-8; ¶31, pg. 12:5-8; ¶33, pg. 12:24-25; ¶34, pg. 14:15-17; ¶37, pg. 15:13-18; ¶42, pg. 17:9-12; ¶51, pg. 19:8-9; ¶53, pg. 19:15-18; ¶54, pg. 19:19-21; ¶59, pg. 21:3-10; ¶63, pg. 22:13-19; ¶64, pg. 22:20-21; ¶67, pg. 23:14-20; ¶70, pg. 24:25-25:2; ¶73, pg. 25:19-24; ¶94, pg. 30:11-14; ¶117, pg. 35:14-16; ¶118, pg. 35:21-22.

1  theory of liability in the Complaint is that Defendant is liable for the communications between Mr.

2  Greer and Mr. Margenat-Castro which allegedly resulted in Mr. Greer's death.

3      **D.    There is No Reason to Delay Disposition of This Case When the Facts as Pled Are Straightforward and All Implicate Third Party Content**

4

5      Despite the fact that all of Plaintiff's claims are premised on the third party user posts (*See*

6  Complaint ¶¶ 27, 31-33, Exhibit 1), Plaintiff requests that the scope of Section 230's immunity in

7  this case should be resolved at a later proceeding and that discovery is necessary.  (Opp. pg. 17: 2-

8  21.)[10]  The cases cited by Plaintiff for this proposition are inapplicable because they all involved

9  circumstances where the defendant improperly invoked Section 230 as a defense, resulting in the

10 reviewing Court finding that additional discovery was necessary.  The underlying facts in these

11 cases are far removed from the instant action wherein Plaintiff admits that all of the posts were

12 authored by Experience Project users.

13     Plaintiff claims that this Court should continue to examine this case under *Hare v. Richie*,

14 2012 U.S. Dist. LEXIS 122893 at *3-4 (D. Md. Aug. 29, 2012), wherein the defamatory posts

15 were allegedly authored by the website's owner, Nik Richie.  *Id*. at *6-10.  The Court found that

16 Mr. Richie was not entitled to Section 230 immunity for his own substantive commentary on the

17 message board (posts such as "He's trying to prove to himself he's not gay. —nik.") and allowed

18 the case to proceed to discovery.  *Id*. at *54.  Again, *Hare* is not applicable to the allegations in

19 this case where it is undisputed that the allegedly harmful content was provided by the third party

20 drug users, drug sellers and other posters on Experience Project, not by Defendant.

---

[10]    Plaintiff relies on *Swift v. Zynga Game Network, Inc.*, No. C09-05443 SBA, 2010 U.S. Dist. LEXIS 117355 at *1-8, 11-13 (N.D. Ca. Nov. 2, 2010) which involved claims that two software companies fraudulently charged gamers for virtual currency in connection with various game applications.  The Court noted that the allegations as pled indicated that defendant was not entitled to Section 230 immunity because it appeared from the face of the Complaint that the defendants created the allegedly deceptive offers.  *Id*. at * 18-27.  Plaintiff also cites: *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 844 (N.D. Ca. 2012) a class action alleging that Apple, Inc. failed to prevent third party software applications distributed through the App Store from uploading user information, and; *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2008 U.S. Dist. LEXIS 79200, at *1, 24 (C.D. Cal. July 16, 2008) which involved multiple intellectual property claims in connection with Google's creation and display of thumbnail versions of plaintiff's images in Google's search engine.

Plaintiff cannot demonstrate why discovery would be necessary in light of her own pleading admissions which are confirmed by the website printouts in the Complaint. Allowing Plaintiff to proceed with this action or engage in discovery to purportedly develop a more "fulsome record" would be inconsistent with the Ninth Circuit's maxim that "section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Roommates*, supra, 521 F.3d at 1175.

### III. PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO WARN SHOULD BE DISMISSED

#### A. There is No Support for Plaintiff's Claim That a Special Relationship Existed Between Mr. Greer and Defendant

Neither party has located any authorities finding that a special relationship giving rise to a duty can exist between a website and its users. According to Plaintiff, a social networking website such as Experience Project is the modern equivalent of a brick and mortar establishment and therefore Defendant had a duty to Mr. Greer to take affirmative action to control the wrongful acts of third parties. (Opp. pg. 18:10-22.) Under Plaintiff's proposition, every individual who visits a website on the internet would be a business invitee and the website should be liable every time a website owner facilitates peer to peer communication between two individuals that results in injury. Common sense dictates that such a duty would be impractical and undoubtedly open the floodgates of litigation. No case supports plaintiff's proposition.

Plaintiff claims that *Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) supports such a drastic expansion of California tort law. In *Bidder's*, the Court granted eBay's request for a preliminary injunction to prevent a competing auction website, Bidder's from accessing eBay's computer system for the purpose of copying any part of eBay's auction database. *Id*. at 1060. Based on the dearth of authority supporting a preliminary injunction based on an ongoing trespass to chattels, the Court invoked the notion of a trespass to real property and clarified that "applying traditional legal principles to the Internet can be troublesome." *Id*. at 1067, fn. 16. Since *Bidder's* was published in 2000, Courts have not expanded this "brick and mortar" analogy to create a duty, and rightfully so, as <u>physical activity did not occur on Experience Project – only third party speech</u>. Plaintiff's claim that, under *Bidder's* and similar

authorities[11] this Court should find that there was a special relationship between Defendant and Mr. Greer lacks support.

The only cases Defendant has located which discuss the possibility of imposing a duty to warn on a website in similar circumstances are twofold, and both find no duty: 1) the Central District's dismissal of Jane Doe's failure to warn cause of action in *Doe v. Internet Brands, Inc.*, No. 2:12-cv-3626-JFW (PJW), Doc. No. 51, at *7 (C.D. Cal. November 14, 2016); and 2) *Beckman v. Match.com*, No. 2:13-CV-00097-JCM-NJK, Doc. No. 43 (Dist. Nev. March 10, 2017). Both cases found that no special relationship existed between a website and its users.[12] Due to the absence of a special relationship between Mr. Greer and Defendant, Plaintiff's failure to warn claim must be dismissed.

### B. Secondary Assumption of Risk Does Not Apply Because Defendant Did Not Owe Mr. Greer a Duty

Primary assumption of the risk, which involves conduct of a defendant that does not breach a legal duty of care to the plaintiff, has not been merged into the comparative negligence system,

---

[11]  (Opp. pg. 19:21-25.)  Plaintiff also cites additional cases in support of the brick and mortar analogy – *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566-1567 (1996), *Compuserve Inc. v. Cyber Promotions*, 962 F. Supp. 1015, 1021 (S.D. Ohio 1997), *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 438 (2d. Cir. 2004).  None of these cases all provide any substantive guidance in this action.

[12]  Plaintiff also claims that the Complaint's allegations of Defendant's misfeasance created a duty on the part of Defendants, distinguishing this case from the Central District's holding in *Internet Brands*.  While the Central District's discussion of California tort law included discussion of misfeasance, the Central District concluded that "there is no exceptional reason to depart from the common law rule that "one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Internet Brands,* supra at *6.  The Central District also referenced *Conti v. Watchtower Bible & Tract Soc.*, 235 Cal. App. 4th 1214, 1227 (2015), wherein the Court of Appeal applied common law pertaining to criminal conduct of third parties and found that a congregation did not have a duty to warn that one of its members was a convicted child molester with a high recidivism rate, despite plaintiff's claims that the congregation's affirmative conduct caused the harm.  The *Conti* Court found that such arguments were applicable to the duty of care, not the duty to warn and found that the church did not have a duty to warn. *Id*. at 1231-1232.  Finally, the Central District's thoughtful analysis included the review of all of the factors set forth in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968) in determining that the defendant website did not have a duty to warn. *Internet Brands,* supra at *6-7.

but continues to operate as a complete bar to a plaintiff's recovery. This is so because by engaging in such conduct, the defendant has not breached a legal duty of care to the plaintiff, and thus there is no reason to invoke comparative fault principles. *Knight v. Jewett*, 3 Cal. 4th 296, 305-310 (1992).[13]

The question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the <u>activity</u> or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that <u>activity</u> or sport. *Knight v. Jewett*, 3 Cal. 4th 296, 312 (1992). Courts define the risks inherent in the activity in conducting this analysis. *Id*. at 317. In this case, the nature of the illegal activity – the voluntary purchase and ingestion of heroin from a complete stranger – should be determined as a matter of law to be of such a dangerous nature that the doctrine of primary assumption of risk serves as a complete bar to recovery.

### C. Assumption of Risk Can Be a Question of Law When the Facts Are Clear, Such as in This Case

Plaintiff further erroneously claims that only the trier of fact can determine whether Mr. Greer assumed the risk of his own conduct, based on *Digby Adler Group, LLC v. Mercedes-Benz U.S.A.*, 2015 U.S. Dist. LEXIS 45523 at *25 (N.D. Cal. Apr. 7, 2015). Plaintiff's discussion of *Digby* is misleading. Under *Digby*, if the evidence is "clear, direct and undisputed" then the Court can determine that the affirmative defense applies. *Id*. at *25. "Affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is 'apparent from the face of the [C]omplaint.'" *Goddard v. Google, Inc*., 640 F. Supp. 2d 1193, fn. 5 (N.D. Cal. 2008). The Court can dismiss the Fourth Cause of Action based on Mr. Greer's primary assumption of risk because his participation in the inherently dangerous and illegal activity is established by the allegations in the Complaint. This issue may be resolved as a matter of law if reasonable minds

---

[13] Plaintiff claims that secondary assumption of risk (and accordingly, comparative fault principles) applies to this case because Defendant owed Mr. Greer a duty. However, Defendant did not owe Mr. Greer a duty. See section III.A.

can come to only one conclusion. *Zelig v. City. of L.A.*, 27 Cal. 4th 1112, 1118 (2002). Purchasing heroin from an anonymous Internet poster poses an obvious and serious danger, including that of overdosing, about which reasonable minds cannot differ.

### IV. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT DUE TO THE ABSENCE OF ANY POTENTIAL FOR LIABILITY

Plaintiff should not be granted leave to amend because the facts pled on the face of the Complaint establish a bar to all of the causes of action. Plaintiff has not shown, and cannot show how she would amend the Complaint in a manner that would avoid the reach of Section 230 or alter the charging allegations that Mr. Greer illegally purchased and ingested heroin, thus assuming risk of serious harm or death. *Steckman v. Hart Brewing*, 143 F.3d 1293 (9th Cir.1998).

### V. CONCLUSION

Federal and state courts, including this Court have confirmed that websites cannot be held liable for the innumerable posts created by its third party users, as allowing such liability would be antithetical to the national policy explained by Congress "to promote the continued development of the Internet and other interactive computer services and other interactive media." 47 U.S.C. § 230(b)(1). Imposing a duty on websites to warn of the possible criminal acts of its users would be impractical and contrary to this sound policy.

Experience Project was the quintessential forum for development of media via free speech, as shown by the topics discussed in its forums. (Complaint ¶18) Despite Plaintiff's conclusory allegations that Defendant wrongfully "steered" its users towards harmful content, Defendant was only a social networking website that served as a conduit for its third party users. The Court should follow the substantial weight of authority and dismiss the Complaint, without leave to amend.

DATED: October 13, 2017         LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ David E. Russo*
Shawn A. Toliver
David E. Russo
Justin S. Kim
Attorneys for Defendant
THE ULTIMATE SOFTWARE GROUP, INC.